Good morning, your honors, and may it please the court. On behalf of Mr. Escobar-Marroquin, I guess I'd like to start with the sort of precept that every criminal defendant has the right to be judged on his own criminal record. And I think that's obviously true in every case. It's even more true in a case where the district court imposes a substantial upward variance under Booker and its progeny. I'd like to emphasize a few of the mitigating facts in this case. Before MS-13 started extorting my client and his family, which is an undisputed fact here, my client lived in the United States for over 20 years with no contact with law enforcement whatsoever. Now, granted, he was here without permission, but he didn't have any other... Back and forth to his home country? There's no evidence of that in the record other than one. Yes, apparently in the 80s he returned to his home country once and got married. Other than that... I'm getting children aged 21 and 14 in San Salvador without going back and forth. It's possible his wife came here, Your Honor. I mean, there's no evidence in the record to show one way or the other. And leaving aside the legal status, which is true, of course, in every illegal re-entry case, my client didn't have any criminal contact with law enforcement in the States for over 20 years. I thought he said some statement that he went back and forth during these 20 years. Other than the one about the marriage, Your Honor, I don't... Right, you don't remember one. I don't remember one way or the other. And that's not something that's been... No, I know. Yeah. So, and the other thing I'd like to emphasize is that, you know, coming into the... before you've ever been deported, coming into the country is a misdemeanor under Section 1325. It's a misdemeanor that's actually your first offense is punishable by a maximum of only six months. And so it's not a felony immigration violation until after you've been deported. My client has been deported once in 2009, and therefore he's committed a 1326 felony violation only once, and that's the re-entry that he's being punished for right now. So over and over in this case, both in the district court and, I'm sorry to say, on appeal, if you look at the red brief at page 35 and again at 22, the government claims over and over again that, I'd like to get the phrase right, that my client is guilty of multiple immigration felony violations for which he has not been prosecuted. That is not true. My client has committed one felony immigration violation and is the subject of this prosecution. I think that's a crucial point because it's an overstatement of my client's criminal history, and the district court relied on that. If you look at page 120 of the joint appendix, Judge Gibney referred to repeated re-entries. Re-entry under 1326, we all say, as you do, illegal re-entry. 1326, its elements include illegal re-entry subsequent to deportation, subsequent to a conviction for an aggravated felony if it's B-2, which this case is, which, as you know, substantially increases the statutory maximum. And so the overstatement of my client's criminal history is a huge mistake in a case, especially where there's a 30% upward variance in the sentence that he received. In that sense, my client has almost a minimal record for somebody who's guilty of a B-2 violation because he had one aggravated felony, one deportation, one return, and then, of course, the crime, which is how they found him in 2010. He's not a serial recidivist person who gets deported and comes back. And if you look at the cases that we cite, such as, for example, Lopez Ramirez and Mejia Martinez and a litany of these cases that both sides have cited, lots of them include 1326 clients where they've been deported three, four, five, six times. Mr. Lopez Ramirez, I can tell you, had been deported a number of times and I think had six illegal re-entries prior to the case that was litigated that's cited in the briefs. That alone distinguishes Mr. Escobar American from all of these other cases that the parties are citing. He hasn't been deported a number of times. This is his first illegal re-entry. And, again, that's something that the government has misstated on appeal and that Judge Gibney relied on in imposing the upward variance sentence of 60 months on my client. I don't want to leave without a clear understanding of where you've gone with this, but it seems that there was one deportation and then two felonies. Your Honor, just to clarify, there was a felony and then a deportation and then a felony. So he had the 2009 cocaine conviction. He served six months in Virginia state jails. He was deported in late 2009. He came back in 2010 and he was arrested again in 2010 for a cocaine conviction. And so it was felony, deportation, felony, and then this prosecution. My understanding is he's been detained since he was arrested in 2010, first by the state for 18 months and then by immigration authorities on this federal indictment on the illegal re-entry charge. So there's felony, deportation, felony, which is you need to have the felony before the deportation in order to be guilty of a 1326 violation. You have to have been deported subsequent to sustaining a conviction for an aggravated felony under 1326b-2. So, I'm sorry, court's indulgence. I think you had a list of things whereby you thought that the government had overstated the situation here. Yes, Your Honor. I think you were in the midst of putting it. So the first one, in the district court, the government has no longer, the government mistakenly referred to my client as somebody who had sustained convictions for dealing heroin in addition to powder cocaine. Government obviously has recognized that that's not the case and has not pursued that argument on appeal. I think the other serious overstatement of my client's criminal history is the one I was discussing, which is this idea that he has multiple repeat immigration felony violations. And again, that's one that Judge Gibney relied on and it's just simply not true in this case. Because there has only been one deportation and there was only one entry after the deportation, my client's only immigration felony is the subject of this instant case. It's the one for which he's serving time right now. Well, I think that you make a fair case that there are a lot of misstatements in the government's papers. They say that your man had 12 years of school, actually he had only four, that he had several serious drug trafficking violations. In fact, that's not true. Both of these violations are almost not violations. I think that's true. And finally, he relies or talks about this Cervantes case. And it seems like if you compare the records in Cervantes with this one, what he did, he was the prosecutor in Cervantes and he used as many lawyers do, as maybe all of us have done at one point or another, he used that as the example from which he started and then he made modifications for this case. What I'm not clear on is how much that affected the district court. And that seems to me is where I would ask you for some assistance. Certainly, Your Honor. As I said, the district court, and I talked about this at length in my brief, the district court appears to have imposed the upward variance almost exclusively in reliance on two factors. He phrases them in a multi-page discussion. The district judge phrases it a number of different ways, as my colleague points out. But basically, it seems to me that the district judge was most upset about two things. One is the two drug dealings. And I think you're right. While they're both technically trafficking violations, it's less than a gram of cocaine each time. This is not a large scale. We're not even talking about multiple grams, never mind kilos, which is what at least I think of when I think of trafficking as a serious word. Judge Gibney was very upset about the drug dealing and was very upset, rightly so. But again, I think failed to recognize that my client's drug dealing record is very minimal. And also didn't really give my client credit for the many years that he spent. Well, why do you think it's minimal? I don't understand that. Well, less than a gram of cocaine, Your Honor. I mean, that's like a Splenda packet. Small quantities. I mean, over time, you know, you have distributed a large quantity. But there's no evidence of large quantities in this case, Your Honor. Your argument gets strength from the fact that this Cervantes person had a much worse record, was selling large quantities of heroin and cocaine, and didn't get the upward departure. And I looked, Your Honor, to make sure the other day. Mr. Cervantes did have the same guideline range as my client and was a much more serious drug dealer, got a 46-month sentence, which is the top of the guideline range, from a different district judge in Richmond. You know, we have the guidelines to try to make everything even, but we all know different judges are entitled to and do weigh these things differently. But that gives a little bit of legs to your argument about this not being a serious drug offense. Indeed, Your Honor. And I will say anecdotally that the district judge who sentenced Mr. Cervantes actually regularly imposes upward variances in illegal reentry cases. And the fact that he didn't for Mr. Cervantes is obviously within his discretion. And Mr. Cervantes, you know, didn't appeal his sentence, as far as I can tell from Pacer. It was not represented by the federal public defender. But in this case, Judge Gibney went on for, you know, between pages, I think, 119 and 123 of the Joint Appendix, went on for pages and pages and pages about the drug dealing of my client. And the fact is that my client's drug dealing record is fairly minimal by comparison. And if you look, I mean, quantity of drugs is important, Chief Judge Haxler. That's what 2B1.1 is based on, as we all know. And meanwhile, the government mistakenly, and I agree with your hypothesis how this happened, overstated that and also overstated the immigration record of my client, which this is his first felony immigration violation, and he was prosecuted for it. And Judge Gibney referenced repeated reentries, which is just... He said reentries. My notes on page 120 said, quote, repeated reentries. And so that's wrong. And again, with all of these 1326 cases that we've cited, many of those defendants had repeated reentries. I was not, Your Honor. Yes, and I did ask my colleague who was trial counsel about that. My understanding is that it happened at the arraignment and that my client became upset at the arraignment. And, again, I don't think it was any kind of a violent scene. I think he was upset. But, again, members of his family, not to overstate it, but members of his family are being killed by MS-13 because he's not paying extortion money. Maybe it was entirely justified. I'm looking at other reasons by the district court, and that seemed to be alive and well as a reason. Yes, he mentioned it. Judge Gibney mentioned it at the plea, and my understanding is it happened at the arraignment, and then mentioned it again at the sentencing about my client begging for mercy and appears to have not taken it well. And my client actually allocated at sentencing for a long time as well and was very upset about what had been going on in El Salvador with his family. But I think, as Your Honor has pointed out, my strongest argument is that Judge Gibney based his upward variance on my client's criminal history. My client's criminal history was incorrectly overstated, both by Judge Gibney with respect to the immigration violations and repeatedly by the government. And again, with respect to the immigration violations, the government has continued that error on appeal in its red brief. In the transcript of what Judge Gibney was saying when he was giving the reasons, what's your best evidence that he's basing his sentence on your client's criminal history? Well, so I have a list in my brief, Your Honor, of all the different times he mentions the drug dealing. It's throughout multiple pages of his reasoning, and with respect to the immigration— There's no debate about his dealing drugs, is there? No, my client definitely has two cocaine convictions in his record, one from 2009 and one from 2010. He talks about illegal re-entries. Yes, Your Honor, and if you look at— Is that your best argument with Judge Trexler's? I think the strongest— That's not criminal history. You're saying that's—his references to illegal re-entry is the overemphasis of his criminal history? I think it's both, Your Honor. It's both his repeated reliance on the drug dealing, and also if you look at— It's line 10, Your Honor, of JA-120. His criminal—this is Judge Gibney speaking. His criminal history consists essentially of the repeated re-entries— There's a misspelling, but that's what it says—and the distribution offenses. I mean, it's clear that the judge relied on this misstatement about the immigration history, and again, in many 1326 cases it is true that there are multiple deportations and multiple re-entries, but it's not true in this case. And, you know, for all that my colleague wants to posit that there's a universal rule in 1326 sentences, there can be no universal rule about the exercise of a judge's discretion, and I think that's particularly true when you're talking about a Booker or Gall variance, where, you know, honestly, Your Honors, if my client had gotten a within-guidelines sentence, I don't think I would have any argument at all, but the fact is that my client received a substantial upward variance on the basis of misstatements and misperceptions about the seriousness of his record, and again, I'd like to emphasize he didn't have any contact with law enforcement for more than 20 years that he was here until 2009. I see that my opening time is about to expire if the panel doesn't have further questions. Okay. Thank you, Liz. We'll hear from Mr. Schiller. Mr. Schiller, I would ask you, you didn't intend to misrepresent the record here, did you? Absolutely not, Your Honor. And I take it that you'll be more careful the next time. Oh, Lord, I am. If I may ask the Court's indulgence, I've been in this job 29 years, or almost 29 years, and this has never happened. I'm at a loss of words. I do notice that some of the language, some of your rhetoric, which is not exactly wrong, but certainly had more of a place in the more serious crime that preceded this one of another client. So it didn't seem to me there was much filter, that the government was going banging with all guns, no matter whatever, and we would hope that the federal prosecutors would have some discretion about when and where they would be asking for departure. And there's no one that's kicked me, more than me, about this. You called it exactly right in terms of what happened here. The Cervantes motion was filed a week before this one. I was involved in a huge number of things, and I used that as the model, and I did a very poor job, I acknowledge, editing. Thus the word heroin comes in. When I cut and paste the section dealing with drug dealing and history in an illegal immigration case, the same thing with felony immigration violations and the use of reentries and the wording there. Yes, it's exactly as Your Honor says. I will, and I don't attempt. What would be, in every case do you ask for an above guidelines sentence? Oh, absolutely not. Well, what may this be? There are two, there's one illegal reentry, and there are two pretty minimal, under a gram. I always get my, is that right? Under a gram. I think the other one was unspecified, but it was taken that way. I think it was six small bags or something. Nine bags. Somebody said somewhere is under a gram. I think gram is the right thing. Every time, what would have to be different so that you wouldn't have asked for the upward departure? There were two things about this case. One is the number of entries. There's only one. Yeah, one felony entry, which is the one he was prosecuted for. There's only one conviction for reentry, but there's more than one illegal entry. Precisely. Isn't that a word of art for purposes of sentencing? I don't believe so. If I had said illegal reentries, that would relate, I think, fairly to a 1326 suggestion. My thought process here was that you have a defendant who comes, who then goes back to get married once he becomes an adult, then comes back illegally across the border. Sometime after that— How many illegal reentries do you think there were? At least three. The initial one, the— I thought you just said to me that illegal reentries are a word of art, but reentries are not. One could say—I'm sure Ms. Platt would argue that. I think that— I thought you just said it to me. No, I said one could say that, yes, in fairness to the argument of my colleague here. That was not my intent. And I would stress that Judge Gibney never said illegal reentries when he was— No, he said reentries. And I think he understood the— Criminal history consists of repeated reentries, not— And we talked about— Is it part of his—does he have reentries, repeated reentries in his criminal history? He has repeated violations of the immigration laws, and that is part of his unprosecuted criminal history, as the case law talks about that district courts can— Unprosecuted criminal history. That's hard to— We've never heard of that before. Well, I cite the cases that talk about that a district court can take that into consideration in applying their discretion to where it's sentenced. If you had this case tomorrow with exactly the same facts, you would once again ask for the increase. That is a hard question to answer, because I give weight to the points that counsel has made in this appeal and the comments the court has already made as to the quantity of drugs. Perhaps I should have taken a closer look at under one gram. I looked at those drugs and cases in terms of— I have a state judge. First of all, it's a guilty plea. to possession with intent to distribute, not just possession, despite the suggestions in the appellate brief that this is a small-change guy. The second thing is I have state judges who initially impose a five-year sentence. Admittedly, four and a half was suspended, but that's, my understanding, state practice. That judge obviously thought it was a serious thing, given the amount of comeback time. Then the second case, the judge went up substantially to a seven-year sentence and suspended, I believe, it was five and a half months. Five and a half years. Or five and a half years, yes. When I try and look at state criminal history convictions, I try and evaluate that in terms of how did the state judge look at it and what did the second state judge think of this. Obviously, I think given that he thought—I'm sorry, I don't know who to say he or she— thought that the second time around they thought it was even more serious and therefore increased— That's surprising, right? No, no. We think it was more serious the second time around. No, but I'm not— So your answer is you're not sure if you would or not. I would take a hard look at it for the reasons that we've gone through. I still tend to think that this merited a consideration of variance for that reason and those two things. If I may just, however, go back to just my explanation on my gaps here. I just want to tell the court, and I do ask your indulgence in this regard, that 2012 was a very hard year for me. I did 58 new indictments in this area. I was solely handling all of the immigration things. At the same time, I had 14 appeals to this court to handle as well as many other matters. Frankly, the lesson I learned is what I could do at age 48 I can't do at 58. Your Honor was exactly right. I took the other motion. I did a poor job editing it, and I am both chagrined and very apologetic. As to that, I just don't make those mistakes, and I have taken steps both to lessen the intensity of the work level and also be even more scrupulous on editing. I would ask the court to accept that. It was not by any means intentional to misstate the record in any way. I suppose we could help sanitize it by simply sending it back to be redone. I don't think that's necessary, and my only concern is that this court not think that I was intentionally doing that. I really do think we appreciate your candor. I can't tell you how embarrassed I am to stand here and say this, and it's caused me the hard judgment. My former colleague who now works for you, Robert Jaspin, explained when he left the office, he said to me, because I asked him, he said litigation is a young man's game, and the sad truth is that's the case, and that's the cold reality I've had to come to grips with here. In these many, many drug cases that you have had, in these illegal entries and reentries, have you ever not asked for an enhanced sentence? Yes. There are some. Would you say you had 60 of them? There were 58 new indictments in 2012. I looked at the computer and probably had another 20, 25 carryover from the prior year. How many cases did you have a plea or a sentence or something like that? A guess. 70 would be an easy guess. And of those, how many times did you ask for a guess? I do not know the answer to that, but I think maybe eight or ten cases. And you handle them all for the whole office, so there's no prosecutor to compare your record to in the office? No, that's correct. That's correct. You look at the other circumstances. Someone came back here. I remember one case, I can't think of the name of it, where the alien was genuinely concerned about an allegation, a mistreatment of his child. And that was the claim as to why he came back. Try and look at those kind of things to decide what we're doing here and why. And I'll point out, Judge Gimney focused on this as well. He said the most important thing for him in that sentencing hearing was not the number of coming back in the border, because Judge Gimney, I will tell you, does not see it as a problem, people coming here to work. Judge Gimney said that after 2009, all of a sudden he's dealing drugs, and he gets that one serious conviction of five years and then gets deported after that and comes very quickly back. I think the defendant said it was like a three-month period, whatever it was. And Judge Gimney focused on that only and said, you came quickly back and you started dealing drugs again. And that was the thing that troubled Judge Gimney, and that, as he put it, drugs, dealing, even this, the facts here, which, by the way, were stipulated by all parties as set out in the pre-sentence report. Judge Gimney said, this is not a victimless crime. And I think the words were something along the lines of, I might be inclined to give you a break, Mr. Escobar-American, but you did this and you did it on a quick turnaround, and that's not a victimless crime, and I have to ask who else has gotten addicted, I think was the words he used in his commentary. So I, Judge Gimney, treat it very seriously with regard to that. I want to stress that despite what the argument was made by the other side, the good thing, the only solace I find in this case, after my apology, is that Judge Gimney did not get confused by my mistakes and actually made very specific findings that I think are quite reasonable in this case. One may disagree with his ruling, but that's obviously not the standard in looking at a sentencing. It was the judge reasonable, and did he specifically articulate the reasons why. Tell me about the two drug dealings he relied upon. On the surface of it, if you just think that any possible quantity of drugs means you're out there helping people get addicted, I think this was less than a gram? I don't believe the quantity was actually established in the first one, but the second one was .884. Yes, less than a gram. Give me some idea of how much that is. I know generally the weight of a gram is really, really small. But what I'm trying to get at is from your comments and what you ask us to do is to consider Judge Gimney's statements and the like that he came back quick and he started dealing again, but he has .8 grams. Maybe you're saying the trafficking alone sort of allows us to infer there must have been some more, this was just the beginning. What do we get from that? I think Judge Traxler's comment already pointed out that. He's caught with the one bag and some cash in that instance. The facts, as set out in the pre-sentence report, were that an informant went to an officer, a detective, and said, this person, he described him and then ultimately pointed him out when the defendant came out of the restroom, I believe is where the facts go, has been selling baggies of cocaine in there. And then the detective approached him. The defendant gave him a false identification, both as the name and was cut up and adjusted badly. It was a Mexican driver's license, memory serves, but it was altered. And then it proceeded from there. And in the consequence, they find the one bag still on him. The same kind of little blue baggies were used in the first conviction. In that case, yes. So it was .9 grams of cocaine, less than a gram. Yes, okay. Nine-tenths of a gram. And so that was his process there. And I think he had like $700 to $800 in cash on him at the time in the first offense as well. So putting myself in Judge Gibney's evaluation, a couple of things. One is you seem to have the same kind of actions in both cases. You have the same kind of baggies. And you also have state judges who imposed the sentences that they did. And the defendant could have pled to possession if that was the facts that supported the case. He did not. It was possession with intent to distribute. And there were serious sentences imposed on each of those. And I think the judge made the conclusion that they were to be deemed serious cases for his determination of how to use his discretion. In the quick free entry, at least to follow his logic on this, here's someone who goes, he's put out of the country, comes right back and immediately starts it again. It would seem to indicate this is not someone who's doing this because over a period of time he has developed a need for cash or whatever. This is what he does. He came back and immediately did it. Is that sort of it? Well, the judge was, I think, raising that point in the question of deterrence and a need for deterrence. The argument was he was addicted. He was doing it for his own happiness. There was certainly in the record that he was a user and it wasn't contested at the sentencing. But it was also established and not contested at the sentencing that he was dealing to. What was going on there was the judge's concern was, as you point out, that he gets a serious sentence here in the state, he gets deported. His response to that is to violate the immigration code coming back after the deportation, which is a felony violation, and also then to recommence dealing drugs. And while the quantity is not great, the pattern is what troubled the sentencing judge here, and I think that was a fair call on his. Because remember, the standard for reviewing the sentencing is not just reasonability, but it's a substantial deference to the judge's discretion. The last thing we could have is this court being forced to de novo review every sentencing, and that standard is there. The appellant is only speaking of reasonableness, but it's an abuse of discretion standard that applies, and there's no abuse of discretion that I can see here. Let me ask one other question. Criminal history determination of the judge, you have the one conviction for the deportation and then apparently a number of uncharged misconduct, uncharged instances, and I gather that is appropriate for the judge to consider in sentencing for determining the criminal history. Is that correct? In terms of the total, under the characteristics and history of the defendant, section of 3553A, this court has said, and I cited the cases in the brief, a number of times that uncharged conduct and even acquitted conduct can be considered by the district judge, not as a binding thing, but he's not going to put on blinders or close his eyes to it either. And this court has said that that's appropriate to consider in the totality as the court has applied the standard of all the circumstances regarding this particular defendant. And I'll give you the example. The case that I cited in the brief that is not addressed by the appellant is U.S. v. Perez-Lopez in 2009, which is an unpublished decision, I'll quickly say, but in that case you look at, no case, no decision, the facts directly apply to the next case. My problem with unpublished decisions and citing unpublished opinions to us, suppose there was an unpublished opinion in this case affirming and laying out the inadvertent but misrepresentations made by the prosecution. In the next case, is the prosecution going to say to me, oh, misrepresentations are fine. You've already decided this is an unpublished case. That's why we make them unpublished. They're not precedential. Which is why I very quickly said that. You should take some comfort in the fact that it wouldn't be precedential. I do not expect to be back in this circumstance ever again, Judge, but your point, I hear you loud and clear. You're not the only prosecutor that comes in front of us. No, no. People make universal rules from these unpublished opinions. I do not assert that. I reference this as an example of use of discretion, and I'm very quickly running out of time. The circumstances there were three prior unprosecuted entries he was prosecuted on his fourth. There was no criminal history whatsoever. The guideline range was zero to six months and a base offense level of six. There were no criminal history points. The guideline range, as I say, was zero to six. The judge, based on the totality of circumstances, primarily the prior entries that had not been prosecuted, justified an imposition of a sentence of 16 months, which was almost 300% above the high end of the range, and the court said the repetitive nature, the need to deter the defendant and others, and the need to promote respect for the law justified that, and this court entered the affirmance on that. It only stands for the proposition of you look at the totals. I see my time is up. May I finish up? All right. Thank you, Mr. Shiller. Thank you, Your Honors. Ms. Platt. And again, my apologies. Thank you, Your Honors. I'd like to start initially by saying that we've made no allegation of intentional misconduct on my colleague's part. To start where Mr. Shiller left off with Perez-Lopez, I would say the first thing that distinguishes that case from this case is that the sentence there is only 16 months, as opposed to the 60 months that my client is currently serving, and as Mr. Shiller said, there was no criminal history in that case, and so it's a 1326A violation, which made the stat max only two years, as opposed to the 20-year stat max that my client faced. But again, I would say that there's, especially in doing substantive reasonableness review, there's a fundamental difference between a 16-month sentence, even when there's a 10-month variance, and a 60-month sentence, which is the result of a 14th paragraph. Going more directly to this point, you would acknowledge, wouldn't you, that the district court could impose exactly the sentence it did? You mean as a matter of statutory maximum? No, as a matter of reasonableness. Well, I'm not conceding that. Not that he did. Okay. You're saying he didn't do it on the basis of this record, but he could. He could make findings that would be bulletproof and end up with exactly the same sentence. Theoretically, sure, but I think the record in this case is just a little too sloppy to allow it to move forward on that basis. In other words, it doesn't get your man out. No, it just gets either me or my colleague back in district court to make sure that Judge Gibney understands my client's actual history. To answer, I think, Judge Wynn's question, my understanding of a gram is that it's roughly the weight of a paperclip and I think is about the size of a Splenda packet or a sugar packet. Revealing my coffee preferences here, sorry. With regard to the nine things that didn't equal that. Correct. I would say from my other litigation experience, my understanding is that a reference to a dime bag is usually deemed to be one-tenth of one gram, and in this case it's nine blue small dime bags in the first cocaine 2009 conviction. Nine little bags that can fit into the Splenda packet. Right. And then in the second case, as Your Honor pointed out, it's .884 grams that my understanding is is in one bag and not split into smaller units. Not whole Splenda packets. Right. Why is the evidence not, why is it not sufficient to say the judge gave this individualized assessment if we look at it in the light that the government seems to present it in, that is, the judge emphasized a quick reentry and then immediately getting back into the drug business with this .9. He pleads guilty to intent to distribute at some point in time. He says he's doing it to raise money for games. And then he talks about the criminal history, which you've got the one deportation and then you have, I assume, at least more than one illegal entry. In the 1980s, Your Honor. The evidence is that these original entries, and I was about to point out, in every illegal reentry case, there has been an initial illegal entry prior to the deportation. That doesn't set this case apart from any 1326 case. The fact that the record indicates only two pre-deportation entries is actually minimal compared to some of the cases I've seen. And, again, the single deportation and the single, quote, illegal reentry, close quote, which, yes, Judge Motz, I'm using as a term of art, it's actually a very small number as opposed to some of the cases that my colleague and I have cited where people get deported three, four, five, six times and re-enter subsequent to each deportation. How much of this comparison of numbers and quantities do we do when we have a district court judge who looks at this and makes the assessment for this individual based upon what's going on here and up with variances? Well, given, I think what sets this case apart, Your Honor, is the misstatements. And, again, the unintentional misstatements, but especially when Judge Gibney refers to, quote, repeated re-entries, close quote, that does not to me demonstrate an understanding of my client's actual immigration history, because particularly when the two initial entries were both on the record in the 1980s and then there's only the one re-entry which is the subject of the instant appeal, it is the current criminal offense that we're talking about. Because of Judge Gibney's misstatements and, frankly, the government's misstatements, it's not clear to me that Judge Gibney had a clear idea in his head of my client's immigration history. And the other thing I'll say is, you know... So let me make sure I understand, in light of Judge Mark's question, if this thing goes back, the judge just simply just doesn't have those misstatements and he sort of does the same thing and comes up with this quick re-entry and in fact there's drugs again and then... I don't think it would be impossible for Judge Gibney to impose the same sentence in a more careful resentencing proceeding on remand, but I think we don't know... To the realm of possibilities, it seems like to me he just could do it. I mean, if it's an individualized assessment and all these things are there, I'm trying to... Your problem is that the misstatements are there and they're too much intertwined with these things to know that he didn't allow those misstatements. Yes, Your Honor, and to draw an analogy to this court's Carter cases, the insufficient explanation cases, which again is not a claim here, I've noticed, and my colleagues have started looking into it, on Carter remands, there are actually a number of cases where a Carter remand has resulted in a lower sentence for the client. I've also had some cases where the same sentence was reimposed with a better explanation, but it's impossible and nor should either I or this court determine what a district judge would do on remand. I mean, that's up to Judge Gibney to work out if this court deems that the mistakes are sloppy enough to send this case back. And just in closing, I'd like to note again that because of the variance, this court should not apply a presumption of reasonableness to Mr. Escobar's American sentence. It's abuse of discretion standard, and given the sloppiness here, I'd ask you to find that the discretion was abused. Thank you, Ms. Blair. Thank you, Your Honors. All right, welcome down to Greek Council.
judges: William B. Traxler, Jr., Diana Gribbon Motz, James A. Wynn, Jr.